IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| TRACY EDWARD JOHNSON, | : | PRISONER CIVIL RIGHTS |
| Plaintiff, | : | 42 U.S.C. § 1983 |
| | : | |
| v. | : | |
| | : | |
| SHERIFF JUD SMITH et al., | : | CIVIL ACTION NO. |
| Defendants. | : | 2:11-CV-59-RWS |

**ORDER**

Plaintiff, pro se, filed this civil rights action regarding his confinement at the Barrow County Detention Center in Winder, Georgia (the "Jail").[1] The case is before the Court for a frivolity review under 28 U.S.C. § 1915A.

**I.   The Frivolity Review Standard**

A federal court is required to conduct an initial screening of a prisoner complaint to determine whether the action: (1) is frivolous or malicious or fails to state a claim on which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. A claim is frivolous, and must be dismissed, when it "lacks an arguable basis either in law or in fact." *Miller v. Donald*,

---

[1] As noted in a related case Plaintiff filed in this Court, Plaintiff recently was transferred to a jail in Walton County, Georgia. *See Johnson v. Smith*, No. 2:10-CV-236-RWS (N.D. Ga.) (Mar. 21, 2011 Order).

541 F.3d 1091, 1100 (11th Cir. 2008).  A district court also may dismiss a complaint if the facts as pled do not state a claim for relief that is plausible on its face. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the deprivation occurred under color of state law.  *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).  If a plaintiff cannot satisfy these requirements, or fails to provide factual allegations in support of his claim, the complaint is subject to dismissal.  *Id.* at 737-38.

## II.    Plaintiff's Claims[2]

Plaintiff was confined at the Jail from June 2010 until early 2011.  He complains in this action of several events that allegedly occurred at the Jail during that time.  He names as defendants the Sheriff of Barrow County and eight officers at the Jail.  Liberally construed, Plaintiff's claims are as follows:

---

[2] The facts described here are taken from Plaintiff's complaint [1] and presumed true for purposes of the frivolity review.

2

1. Jail officials lost Plaintiff's personal property, including clothes, two thousand dollars in cash, and his Georgia driver's license, all of which they took from him when he arrived at the Jail in June 2010;

2. On December 1, 2010, Jail officials used excessive force against Plaintiff in his cell and then by putting him in a "torture contraption";

3. Jail officials were deliberately indifferent to Plaintiff's medical needs resulting from the December 1 incident and delayed in providing him medical care;

4. Defendant Officer Cleveland verbally harassed and retaliated against Plaintiff for filing grievances, and other Jail officials retaliated against Plaintiff for complaining about events at the Jail;

5. The Jail has no set rules or standards among officers and work shifts, which results in arbitrary and oppressive micro-management and unequal treatment of inmates;

6. On December 1, 2010, Jail officials placed Plaintiff in disciplinary isolation, but did not give him a hearing on the issue until December 7, 2010 and did not allow him to appeal the results of the hearing;

7. While in disciplinary isolation, Plaintiff was denied his property, including his Bible, and told that he was allowed to have only legal mail;

8. The Jail does not have an inmate library and Jail officials told Plaintiff that books are not allowed;

9. Grievances are not handled properly and consistently at the Jail, and there is no controlled process for filing, tracking, and resolving grievances.

Plaintiff seeks damages and injunctive relief for his various claims. The injunctive relief he seeks ranges from an order returning his personal property to an order relieving certain Jail officers from duty and an investigation into Jail practices.

## III.    Analysis

As explained below, Plaintiff has stated a viable claim of excessive force against three Defendants, but his remaining claims fail the frivolity review.

### A.    Lost Personal Property

The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution protects persons from deprivation of "life, liberty, or property, without due process of law," but negligent loss of property does not rise to the level of a constitutional violation. *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986). It is clear that "the Due Process Clause is simply not implicated by a *negligent* act of a state official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Even an intentional deprivation of property does not violate the Due Process Clause if the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Georgia law provides a cause of action for injuries to property. O.C.G.A. §§ 51-10-1 to 51-10-6.

4

Plaintiff's property claim fails because he does not allege more than a negligent deprivation of his property. Even if he had alleged an intentional deprivation, the claim fails because he has an adequate post-deprivation remedy under Georgia law. *See Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (finding no procedural due process violation because Georgia has provided an adequate post-deprivation remedy in O.C.G.A. § 51-10-1); *Rymer v. Douglas County*, 764 F.2d 796, 803 (11th Cir. 1985) (holding that Georgia provides an adequate post-deprivation remedy for claims of intentional property deprivation by county officials). Thus, his property claim must be dismissed.

### B. Excessive Force

To state a claim of excessive force in violation of the Constitution, an inmate must allege that he suffered an injury resulting from a jail official's "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *see Brown v. Acting Dir. of Metro Dade Corr.*, 360 F. App'x 48, 53 (11th Cir. 2010) (applying Eighth Amendment standards to pretrial detainee's excessive force claim).[3] "The core

---

[3] Because Plaintiff appears to be a pre-trial detainee, his excessive force and deliberate indifference claims are analyzed under the Fourteenth Amendment's Due Process Clause. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007). The analysis is the same as that for claims under the Eighth Amendment. *Id.*

5

judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 1-2. Factors considered in this inquiry include the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the official, and any efforts made to temper the severity of a forceful response. *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002).

Plaintiff has stated a viable excessive force claim against Defendant Officers Bray, Christy, and Giles. Plaintiff alleges that those officers entered his cell on December 1, 2010, pointed tasers at him, and told him to get on the floor. Plaintiff laid on the floor and put his hands behind his back. The officers then bent and twisted Plaintiff's arms and his right foot while handcuffing him. The officers "roughly escorted" Plaintiff to the sally port, pulling him backwards, and threw him against a wall and a door in the sally port. The officers then strapped Plaintiff to the "torture contraption" and dragged him to a padded cell.[4] Plaintiff's hands were still cuffed and fastened to the middle of his back in the contraption. Plaintiff complained that the

---

[4] Plaintiff does not describe the "torture contraption" in detail. Liberally construing his allegations, it appears that Plaintiff is referring to a chair-like device used to restrain an inmate's upper and lower body with straps or bindings.

6

straps were too tight and causing him pain, but Defendant Bray told Defendant Christy to make them tighter.

Plaintiff alleges that this incident began when Defendant Officer Forrester spoke over the intercom in Plaintiff's cell and told Plaintiff not to talk to another inmate. Plaintiff replied that Officer Forrester had the wrong cell and told him to leave Plaintiff alone.  The officers entered Plaintiff's cell a few minutes later.  Accepting Plaintiff's allegations as true, as the Court must at this stage, the limited verbal argument Plaintiff had with Officer Forrester over the intercom while in his cell did not justify the force used against Plaintiff.  Plaintiff contends that the force and restraints used on him severely bruised his wrist, shoulder, and ankles; caused his ankles to bleed for days, and caused him pain for several weeks. His allegations plausibly suggest that the force used was excessive.  The only Defendants that he alleges used force on him are Officers Bray, Christy, and Giles.  Thus, the Court will allow his excessive force claim against those Defendants to proceed.

### C.     Deliberate Indifference to a Serious Medical Need

Jail officials who deny or delay access to medical care may violate the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  To state a claim of such a violation, a plaintiff must allege facts that plausibly show: (1) the plaintiff had a

7

serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the plaintiff's injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). A "serious medical need" is one that: (1) has been diagnosed by a physician as mandating treatment; (2) is so obvious that even a lay person would easily recognize the necessity for a doctor's attention; or (3) if treatment for it is delayed, the condition worsens. *Id.* at 1307. Moreover, the medical need must be "one that, if left unattended, pos[es] a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted).

Plaintiff admits that he received medical treatment at the Jail for the injuries he allegedly sustained on December 1, 2010, but he contends that the treatment was delayed. Plaintiff alleges that, while he was in the padded cell on December 1, nurse Jeffers gave him pain medication and he showed her his bruises and told her of the pain in his wrist and ankle. On December 3, Plaintiff contends he submitted a written request for medical treatment and that nurse Jeffers gave him antibiotic ointment for his ankles later that day. On December 7, another nurse (unidentified) gave Plaintiff more ointment and band-aids. On December 9, nurse Jeffers told Plaintiff she would review his medical chart.

8

Head nurse Cindy met with Plaintiff on December 14 and allegedly told him he was medically assessed on December 1 while restrained in the contraption and that they had done all they were required to do for him medically. On December 30, Plaintiff contends that head nurse Cindy met with him again and, with four officers surrounding him, tried to intimidate him into signing a form stating that he did not have a medical emergency.

Plaintiff contends that he was not actually examined by medical personnel until January 7, 2011, when an unidentified nurse practitioner examined him and ordered x-rays. X-rays of Plaintiff's hand were taken on January 28, 2011, and x-rays of his wrists and ankles were taken on February 11, 2011. A nurse practitioner told Plaintiff on February 7 that the x-rays of his hand were normal and told him on February 15 that the x-rays of his wrists and ankles were normal. The nurse practitioner gave Plaintiff an orthopedic wrist support on February 7. A medical doctor physically examined Plaintiff on February 23. The doctor gave Plaintiff anti-inflammatory medication, told him to exercise his wrists and ankles, and told him to wear his wrist support only at night.

Plaintiff's allegations are insufficient to show that he had a "serious medical need," as that term is defined in the constitutional context, because his allegations

9

demonstrate that he did not have a medical condition that posed a "substantial risk of serious harm" to him if treatment was delayed. *See Farrow*, 320 F.3d at 1243. Neither the nurse practitioners nor the medical doctor identified any substantial harm to Plaintiff as a result of the alleged one to two-month delay in treatment, and he admits that the x-rays of his hands, wrists, and ankles showed no problems. In February 2011, two months after the alleged incident causing Plaintiff's injuries, the medical doctor prescribed only anti-inflammatory medication, exercise, and use of an orthopedic wrist support at night. Those allegations do not plausibly support a finding that Plaintiff faced a substantial risk of serious harm if he did not receive more prompt medical treatment than he received after the alleged December 1 incident.

Plaintiff's allegations also do not plausibly support a finding that Jail officials knew of a risk of "serious harm" to Plaintiff and "acted with an attitude of 'deliberate indifference'" to that risk. *See id.* at 1243, 1245. A nurse saw Plaintiff on December 1, the day of the incident, and Plaintiff received antibiotic ointment and band-aids twice during the next few days. Plaintiff ultimately received x-rays and complete physical examinations by nurses and a medical doctor. As for the alleged delay in receiving that treatment, head nurse Cindy told Plaintiff at the December 30, 2010 meeting that Jail officials witnessed his mobility every day after the December 1

10

incident. That indicates that the medical personnel subjectively believed that Plaintiff's alleged injuries were not severe, not that they subjectively intended to ignore a serious risk to his health. After Plaintiff continued to complain of pain and requested further treatment, x-rays and more extensive treatment were provided. In short, Plaintiff's allegations do not support a finding of subjective, deliberate indifference to his medical needs. At most, his allegations suggest medical malpractice, which is not cognizable under § 1983. *See McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). His deliberate indifference claim must be dismissed.

### D. Verbal Harassment and Retaliation

Plaintiff's claim of verbal harassment and intimidation – most of which he contends occurred in his discussions with officers over the intercom in his cell – fails to state a claim upon which relief can be granted because such conduct is not independently actionable under § 1983. *See Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("threatening language and gestures . . . do not, even if true, amount to constitutional violations"); *Hammock v. Jarriel*, No. CV 607-025, 2007 WL 1810442, at *1 (S.D. Ga. June 21, 2007) (holding that prison official's use of a racial slur did not state a viable claim under §

11

1983). Verbal harassment that accompanies physical force may be actionable as part of an excessive force claim under § 1983. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Thus, any verbal harassment during the alleged excessive force incident on December 1, 2010 may be relevant evidence for that claim, which the Court has allowed to proceed. *See supra* Part III.A.

Jail officials cannot retaliate against inmates for exercising their First Amendment speech right to petition for the redress of grievances. *Farrow*, 320 F.3d at 1248; *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). To prove retaliation, an inmate must show that (1) he engaged in constitutionally protected speech; (2) jail officials caused him to suffer an adverse action that would deter a person of ordinary firmness from engaging in such speech; and (3) the protected speech and adverse action were causally connected. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Plaintiff has alleged only one incident that could be causally connected to his filing grievances and that could deter a person of ordinary firmness from filing airing complaints. That alleged incident occurred on February 1, 2011. On that day, an officer came into Plaintiff's cell and flushed pills down the toilet. Plaintiff considered the pills as evidence for a grievance he had filed. When Plaintiff asked for an

12

explanation for the officer's actions, Defendant Officer Cleveland cursed Plaintiff over the intercom in his cell. Plaintiff learned a few days later that his family came to visit him on February 1, but were turned away.

Plaintiff contends that Officer Cleveland cursed him and that he was denied visitation rights with his family on February 1 because Plaintiff previously had filed a grievance regarding Officer Cleveland. Plaintiff does not identify who turned his family away on February 1, and the Court finds that Officer Cleveland's cursing Plaintiff over the intercom, even if true, does not support a retaliation claim. Because a more carefully drafted complaint might state a claim regarding the denial of his visitation rights on February 1, 2011, the Court will dismiss Plaintiff's retaliation claim without prejudice. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).   **E**

**Procedural Due Process**

Plaintiff's claim that he did not receive a hearing regarding his placement in disciplinary isolation on December 1, 2010 until six days later and did not receive appeal rights is fairly construed as a claim that Jail officials violated his procedural due process rights. To establish a due process violation, a plaintiff must first allege the infringement of a protected liberty interest. A prisoner has no inherent constitutional right to remain free from segregation because segregation does not usually constitute

13

an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 480, 484 (1995); *Wilson v. Blankenship*, 163 F.3d 1284, 1295 n.17 (11th Cir. 1998). A prisoner is deprived of a constitutionally-protected liberty interest only when: (1) "a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court;" or (2) "the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (citations and quotations omitted).

Plaintiff's allegations do not support a plausible finding that either of the situations described in *Bass* existed in connection with his segregation at the Jail for six days without a hearing. Plaintiff has not alleged that he had a constitutionally protected liberty interest. *See Sandin*, 515 U.S. at 475-76, 486 (holding that thirty days in disciplinary isolation was not the type of atypical, significant deprivation in which a state might conceivably create a liberty interest). His due process claim therefore fails and must be dismissed. *See Wilson*, 163 F.3d at 1295 n.17 (rejecting pre-trial jail

14

detainee's claim that "he was deprived of due process because he was confined in disciplinary isolation without a hearing" ).

### F.     First Amendment Claims Regarding Books

Plaintiff alleges that the Jail has no library and that he was told that inmates are not allowed to have books. Plaintiff also alleges, however, that he has a Bible, which was taken from him while he was in disciplinary isolation. His claim that he is not allowed books is therefore internally inconsistent and frivolous.

Inmates retain the right to free exercise of religion subject to reasonable prison regulation. *Hathcock v. Cohen*, 287 F. App'x 793, 799 (11th Cir. 2008). Whether a prison regulation restricting an inmate's exercise of religion is reasonable turns on an analysis of whether: (1) there is a valid, rational connection between the regulation and the legitimate governmental interest allegedly justifying the regulation; (2) alternative means of exercising the constitutional right are available to inmates; (3) accommodation of the asserted right will impact prison staff, inmates, and the allocation of prison resources generally and, if so, to what extent; and (4) the regulation represents an exaggerated response to prison concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *Hathcock*, 287 F. App'x at 799 & n.7. Courts have recognized that First Amendment rights can be curtailed to a greater degree for

15

prisoners in disciplinary isolation.  *See Gregory v. Auger*, 768 F.2d 287, 289-90 (8th Cir. 1985); *Daigre v. Maggio*, 719 F.2d 1310, 1313 (5th Cir. 1983) ("[T]here can be no doubt . . . that solitary confinement is a disciplinary measure whose very essence is the deprivation of interests the first amendment protects . . . .").

Plaintiff has not alleged facts sufficient to state a viable claim that Jail officials violated his right to exercise his religion when they took his Bible from him while he was in disciplinary isolation.  Plaintiff does not allege that the Jail has a blanket policy prohibiting all religious material or all religious exercise while in disciplinary isolation, but only that Defendant Walker told him he was allowed only his legal mail while he was in disciplinary isolation.  Plaintiff does not allege all the facts surrounding his discipline or even state how long he was in disciplinary isolation.  The Court cannot find from Plaintiff's allegations that the denial of his Bible while he was in disciplinary isolation states a viable First Amendment claim under *Turner*'s four-factor test.  Because a more carefully drafted complaint might state a claim, the Court will dismiss Plaintiff's First Amendment claim without prejudice.  *See Bryant*, 252 F.3d at 1163.

### G.    Claims Regarding Jail Procedures and Grievances

16

Plaintiff's general complaint that the Jail has "no set rules or standards" and that individual officers can make rules as they see fit fails to state an actionable claim under § 1983. Plaintiff's claims regarding specific actions and procedures at the Jail were addressed earlier in this Order. His vague and conclusory allegations that the Jail lacks "set rules or standards" and, thus, subjects inmates to potentially discriminatory treatment are insufficient to state a claim for relief. *See Iqbal*, 129 S. Ct. at 1949.

Plaintiff's claim that the Jail has no centralized grievance system and that grievances are not handled properly and consistently also fails to state an actionable claim under § 1983. Inmates have no constitutional right to the provision of, or proper functioning of, an administrative remedy process at a jail or prison. *Thomas v. Warner*, 237 F. App'x 435, 437-38 (11th Cir. 2007) ("We agree with other circuits that have decided that a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure."); *Baker v. Rexroad*, 159 F. App'x 61, 62 (11th Cir. 2005) (holding that inmate grievance procedures did not create a constitutionally protected interest and, thus, that there was no due process violation); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Accordingly, Plaintiff's claims regarding the Jail's procedures and administrative grievance system must be dismissed.

17

## IV. Conclusion

For the foregoing reasons, Plaintiff's excessive force claim against Defendants Corporal Bray, Officer Christy, and Officer Giles in their individual capacities is **ALLOWED TO PROCEED** like any other civil action against those three Defendants. Plaintiff's claims that Jail officials: (1) unlawfully retaliated against him by denying him visitation rights on February 1, 2011; and (2) violated his First Amendment rights by denying him a Bible while he was in disciplinary isolation are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's remaining claims are **DISMISSED**.

The Clerk of Court is **DIRECTED** to send Plaintiff a USM 285 form and summons for each of the three defendants against whom the Court is allowing this action to proceed. Plaintiff is **DIRECTED** to complete a USM 285 form and summons for each defendant and to return them to the Clerk within twenty (20) days from the date this Order is entered. The Court warns Plaintiff that failure to comply in a timely manner could result in the dismissal of this action. The Clerk is **DIRECTED** to resubmit this action to the undersigned if Plaintiff fails to comply.

Upon receipt of the forms, the Clerk is **DIRECTED** to prepare a service waiver package for each of the three defendants. Each service waiver package must include

18

AO 72A
(Rev.8/82)

two (2) Notices of Lawsuit and Request for Waiver of Service of Summons (prepared by the Clerk), two (2) Waiver of Service of Summons forms (prepared by the Clerk), an envelope addressed to the Clerk with adequate first-class postage for each of the defendant's use in returning the waiver form, one (1) copy of the complaint, and one (1) copy of this Order.  The Clerk shall retain the USM 285 form and summons.

Upon completion of the service waiver packages, the Clerk is **DIRECTED** to complete the lower portion of the Notice of Lawsuit and Request for Waiver form and to mail the service waiver packages to the three defendants.  The defendants have a duty to avoid unnecessary costs of serving the summons.  If a defendant fails to comply with the request for waiver of service, that defendant must bear the costs of personal service unless good cause can be shown for failure to return the Waiver of Service form.

In the event a defendant does not return an executed Waiver of Service form to the Clerk within thirty-five (35) days following the date the service waiver package was mailed, the Clerk is **DIRECTED** to prepare and transmit to the U.S. Marshal's Service a service package for that defendant.  The service package must include the USM 285 form, the summons, and one (1) copy of the complaint.  Upon receipt of the service package(s), the U.S. Marshal's Service is **DIRECTED** to personally serve that

19

defendant. The executed waiver form or the completed USM 285 form shall be filed with the Clerk.

Plaintiff is **DIRECTED** to serve each of the three defendants or their counsel with a copy of every additional pleading or other document that he files with the Clerk. Each pleading or other document filed with the Clerk shall include a certificate stating the date on which an accurate copy of that paper was mailed to defendants or their counsel. The Court will disregard any submitted papers that have not been properly filed with the Clerk or that do not include a certificate of service.

Plaintiff is also **DIRECTED** to keep the Court and the three defendants advised of his current address at all times while this action is pending. The Court admonishes Plaintiff that failure to do so may result in the dismissal of this action.

Finally, prisoner civil rights cases are automatically assigned to a zero-month discovery track. If any party determines that discovery is required, that party must, within thirty days after the first appearance of a defendant by answer, file a motion requesting a discovery period.

**SO ORDERED** this  25th  day of March, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE